UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. L-22- |
| v. | § | |
| | § | |
| $66,705.17 UNITED STATES AND | § | |
| MEXICAN CURRENCY ORIGINATIG | § | |
| FROM 1406 N UNITED STATES HIGHWAY | § | |
| 83, ZAPATA, TEXAS, 78076, | § | |
| Defendant, | § | |

## VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, Plaintiff, by and through the United States Attorney for the Southern District of Texas and the undersigned Assistant United States Attorney, files this action for forfeiture *in rem* against sixty-six thousand seven hundred five dollars and seventeen cents ($66,705.17), hereinafter "Defendant Funds". The United States alleges on information and belief as follows:

### PROPERTY SUBJECT TO FORFEITURE

1. The Defendant Funds were seized from Hilda Diana Villarreal at the address of 1406 North United States Highway 83, Zapata, Texas 78076 on November 16, 2021, during the execution of a search warrant at the residential address. The seized funds included $55,892.90 United States currency and $243,310 Mexican pesos which was converted to United States currency, for a total of $66,705.17 United States currency.

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355. On November 16, 2021, pursuant to a federal warrant under 5:21-mj-1902-01 Homeland Security Investigation

1

(HSI) Special Agent (SA) Kevin Julich seized the Defendant Funds. The seizure occurred in Zapata, Texas and within the jurisdiction of his Court. The Defendant Funds are maintained by the United States Customs and Border Protection.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355, 1391(b) and 1395(a) and (b).

## STATUTORY BASIS FOR FORFEITURE

4. A. Title 18 U.S.C. § 1955, entitled "Prohibition of illegal gambling businesses", makes it unlawful to conduct, finance, manage, supervise, direct, or own all or part of an illegal gambling business. The Defendant Funds represent the proceeds of the operation of an illegal gambling business in violation of Title 18 U.S.C. § 1955, and are subject to forfeiture under Title 18 U.S.C. § 981(a)(1)(C) and cross-referencing Title 18 U.S.C. §§ 1956(c)(7) and 1961(1).[1] Furthermore, Defendant Funds are subject to seizure and forfeiture under Section 1955(d) which provides that "[a]ny property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States."

5. The Organized Crime Control Act of 1970 amended Title 18, United States Code, by adding Section 1955, that is, Prohibition of Illegal Gambling Businesses. The statute defines an "illegal gambling business" as a gambling business which is a violation of the law of a State or political subdivision in which it is conducted; involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day. "Gambling" is defined as including, but not limited to, pool-selling,

---

[1] 18 U.S.C. § 981(a)(1)(C) provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to …any offense constituting "specified unlawful activity" (as defined in [18 U.S.C.] section 1957(c)(7) of this title, or a conspiracy to commit such offense." Title 18 U.S.C. § 1955 is a "specified unlawful activity" pursuant to 18 U.S.C. § 1956(c)(7).

bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or number games, or selling chances therein.

6. Because 18 U.S.C. § 1955(b)(1)(i) requires a violation of the law of a State or political subdivision, it becomes necessary to review the criminal statutes of the State in which the suspected illicit gambling activity occurs. In the State of Texas, Chapter 71.02 of the Texas Penal Code, Engaging in Organized Criminal Activity, makes it a felony if a person commits an offense if, with intent to establish, maintain, or participate in a combination or in the profits of a combination, commits or conspires to commit any gambling offense punishable as a Class A misdemeanor.

A. Pursuant to Chapter 47.03 of the Texas Penal Code, Gambling Promotion, it is a Class A misdemeanor if a person intentionally or knowingly operates or participates in the earnings of a gambling place, engages in bookmaking, or for gain becomes a custodian of anything of value bet or offered to be bet. Chapter 47.06 of the Texas Penal Code, Possession of Gambling Device, Equipment, or Paraphernalia, makes it a Class A misdemeanor if a person, with the intent to further gambling, knowingly owns, manufactures, transfers, or possesses any gambling device that he knows is designed for gambling purposes or any equipment that he knows is designed as a subassembly or essential part of a gambling device.

B. The Texas Penal Code defines "gambling device" as any electronic, electromechanical, or mechanical contrivance that for consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The term further includes, but it is not limited to, gambling device versions of bingo, keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that as a result of the play or

operation of the game award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits. The definition specifically excludes any electric, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

7. This action is also brought to enforce the provision of 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 [of Title 18], or any property traceable to such property." [2] The Defendant Funds are funds involved in money laundering or a conspiracy to commit money and are, therefore, subject to forfeiture under Title 18, United States Code, Section 981(a)(1)(A).

## FACTUAL BASIS FOR FORFEITURE

*OPERATION OF VIDEO GAMBLING DEVICES:*

8. Video gambling device machines, also known as "eight-liners", are gaming devices like slot machines. Each device has an electronic monitor screen, a cash acceptor, and buttons such

---

[2] Title 18 U.S.C. § 1956(a)(1) "Laundering of monetary instruments" provides, in pertinent part: "whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
    (A)(i) with the intent to promote the carrying on of specified unlawful activity or
    (B) knowing that the transaction is designed in whole or part-(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law.
Title 18 U.S.C. § 1956(h) makes it unlawful for a person to conspire to commit a violation Title 18 U.S.C. § 1956.

as "Bet", "Start", and "Cash Out". Each gaming device is operated internally by a motherboard; a printed circuit board containing the principal components of the gaming device, with connectors into which other circuit boards can be slotted.

9. Illegal game room activity utilizes video gambling devices in a consistent manner. Customers place cash into video gambling devices, resulting in electronic credits being revealed on the screen. The video gambling devices only accept cash for credits, and the cash is stored inside the locked device. Each device counts credits. Customers play a select number of credits that result in either the loss of credit or gain of credit. Depending on the type of device, a player "wins" if a horizontal, vertical, or diagonal row of objects line up. The devices now come in multiple variants and can include video reel, video keno, and video bingo games, among many others. Customers have the opportunity to win large amounts of credits, based on the chance play of the video gaming device. Customers typically "cash out" by pushing a button to claim the credits won on the device, resulting in the cash payment by a game room manager and or cashier. The cash that went into the device for credit stays inside the device. The game room, or amusement center, maintains cash on hand in order to payout the customer credits and or "jackpots". Cash is the only payment type identified in this business structure. Game room employees empty video gambling devices. Following cash collection throughout the business day, the game room has a cash profit or loss.

10. A. In November 2019, HSI Special Agents initiated an investigation of Hilda Diana Villarreal (Villarreal). To date, HSI SAs have located and observed illegal gambling business activities at three (3) properties owned by Villarreal. SAs have conducted multiple undercover operations at each location and established evidence of illegal gambling in violation of Texas States Law and Federal Law. SAs have conducted four (4) search warrants at the three (3) identified properties: (1) 503 East Street, Falcon, Texas, 78076, known as "Desert Diamond"; (2)

5

3002 North United States Highway 83, Zapata, Texas, 78076, known as "Golden Amusement"; and (3) 112 Avenue E, Bruni, Texas, 78344, known as "Lucky Spins-Red Building". During each search warrant, SAs seized evidence of ongoing illegal gambling business activities including, but not limited to: U.S. currency, gambling machines, employee cellular phones, and multiple Texas State Comptroller and County coin operated amusement machine permits and licenses.

    B.    A review of the collected evidence resulted in HSI identifying multiple co-conspirators who conspired together to conduct, finance, manage, supervise, direct, or own all or part of the illegal gambling businesses.

11.    On October 5, 2021, a federal grand jury indicted Villarreal for one count of Title 18, United States Code, Section 371, Conspiracy to Conduct Illegal Gambling, and for three counts of Title 18, United States Code, Section 1955, Prohibition of Illegal Gambling Business, violations.[3]

### ARREST OF VILLARREAL

On or about October 6, 2021, a post-indictment bench warrant was issued for Villarreal. On October 27, 2021, Villarreal was arrested for these violations.

12.    On October 27, 2021, Villarreal was interviewed by HSI SAs. During the interview, Villarreal confirmed her home residence address of 1406 North United States Highway 83, Zapata, Texas 78076. Villarreal stated she owns and subsequently leased/rented three properties that were identified by HSI as housing illegal gambling businesses to other co-conspirators, Maria Isabel Mendieta, Juan Fernando Vasco, and Ruben Samuel Villarreal. Villarreal indicated she had received monthly payments for the property leases from other indicted co-conspirators.

---

[3] The criminal case is under 5:21-cr-1702.

Villarreal stated these payments were received in several forms to include cash, check, and other methods. Villarreal stated she likely has records of the payments located "at home."

13. Villarreal was shown several documents by HSI SAs. Villarreal reviewed two lease documents for two of the illegal gambling business locations. These leases appeared to have been created on a word processing form of software before being printed and signed by the Lessee and Lessor. Villarreal indicated that both documents appeared to be accurate. Villarreal stated that both leases she observed had ended in the summer of 2021.

14. A review of the lease documents seized and shown to Villarreal displayed two indicted co-conspirators as the lessees. One lease for 503 East Street, Falcon, Texas indicated a monthly lease payment of $73,000.00 per month due for the building, gambling machines, and utilities, from indicted co-conspirator Juan Fernando Vasco. The other lease for 3002 North U.S. Highway 83, Zapata, Texas indicated a monthly lease payment of $27,500.00 per month due for the building, gambling machines, and utilities from indicted co-conspirator Ruben Samuel Villarreal. Both leases were signed by Villarreal and the respective co-conspirator business operator/lessee. Both signed leases indicated a start date of October 1, 2019. During the interview, Villarreal later disputed the amounts paid by each lessee but acknowledged receiving monthly payments through the summer of 2021.

15. HSI SAs reviewed Zapata County Treasurer's Office records for Amusement Redemption Machine Licenses for 2018, 2019, 2020, and 2021. All four licenses years contained applications for businesses physically located/operating at both 503 East Street, Falcon, Texas and 3002 North U.S. Highway 83, Zapata, Texas. Applications for these locations in 2020 and 2021 listed the owner of the properties/buildings/premises as having an address of "1406 N. Hwy 83, Zapata, TX, 78076" which is the residence of Villarreal.

16. Villarreal was shown a 2019 Webb County Tax Assessor-Collector Owner's Application for Coin-Operated Machines associated with real property owned by Villarreal at 112 N. Avenue E, Bruni, Texas. Villarreal stated the property was owned by her and it was currently leased for approximately $4,500.00 per month. Villarreal reviewed the Webb County Application and observed that the listed owner of the machines on the application was "Hilda D. Villarreal." Additionally, a copy of Villarreal's Texas driver's license displaying 1406 N. U.S. Highway 83, Zapata, Texas as her home address was attached to the application. This application was for coin-operated machines (eight-liners) to be located/displayed for use at "112 Avenue E, Bruni, TX" from March 22, 2019, through December 31, 2019. Villarreal stated a lease for the 112 Avenue E building/property is still active but the lessee had changed.

17. As a result of the overall investigation and statements made by Villarreal to HSI Special Agents, a federal search warrant authorizing the search of Villarreal's residence at 1406 North U.S. Highway 83, Zapata, Texas was issued by the Honorable Christopher dos Santos, presiding Magistrate Judge of the United States District Court for the Southern District of Texas.

    A. The warrant was executed on November 16, 2021, by HSI SAs with assistance of Texas Department of Public Safety, Laredo Police Department, and Texas Alcoholic Beverage Commission (TABC).

    B. Villarreal was present during the execution of the warrant. The search of the location resulted in the seizure of $66,705.17 United States and Mexican currency in Villarreal's bedroom.

### NOTICE TO ANY POTENTIAL CLAIMANT

YOU ARE HEREBY NOTIFIED that if you assert an interest in the property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims

and Asset Forfeiture Actions. The verified claim must be filed no later than 35 days from the date this complaint is sent in accordance with Rule G(4)(b).

An answer or a motion under Fed. R. Civ. P. 12 must be filed no later than 21 days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this complaint.

## PRAYER

WHEREFORE, the United States of America prays:

1. Summons issue according to the normal procedure of this Court, citing all persons having an interest in the above-described Defendant Funds to appear on the return day of process by filing a claim and answer pursuant to Rule G, Supplemental Rules for Certain Admiralty and Maritime Claims, or as ordered by the Court;

2. That judgment of forfeiture to the United States be decreed against the Defendant Funds; and

3. For costs and such other and further relief to which the United States may be entitled.

Respectfully submitted,

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

BY:  /s/ Yoona Lim
Yoona Lim
Assistant United States Attorney
11204 McPherson Road, Suite 100A
Laredo, Texas 78045-6576
SDTX Admission: 3366895
(956)723-6523
Yoona.Lim@usdoj.gov

## VERIFICATION

I, Kevin Julich, Special Agent of the Homeland Security Investigation (HSI) assigned to the Laredo, Texas office, declare under the penalty of perjury that I have read the foregoing Verified Complaint for Civil Forfeiture, and the facts stated in paragraphs eight through seventeen of the Complaint are based upon my knowledge of the investigation and information obtained from other law enforcement personnel having personal knowledge of the investigation, and information I obtained in the course of my review of investigative reports and seized evidence. Those facts are true and correct to the best of my knowledge and belief.

_____
Kevin Julich, Special Agent
Homeland Security Investigation (HSI)

Sworn to and subscribed before me, the undersigned authority, on the 23rd day of March, 2022.

_____
Notary Public, State of Texas

ALICIA M. LAUREL
Notary Public, State of Texas
Comm. Expires 12-14-2025
Notary ID 11790957

My commission expires: 12/14/25.